The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

M.K., through her parents, T.K. and S.K.,

     Plaintiffs,

v.

ISSAQUAH SCHOOL DISTRICT,

     Defendant.

Case No. 2:24-cv-787-BJR

**ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE**

## I.     INTRODUCTION

This matter comes before the Court on the parties' Opening Motions, which the Court construes as cross-motions for partial summary judgment. Pls.' Mot., Dkt. No. 12; Def.'s Resp. & Mot., Dkt. No. 14. Student M.K., through Parents T.K. and S.K. (collectively, "Plaintiffs"), bring the underlying action challenging an administrative law judge's ("ALJ") decision on Parents' administrative due process complaint brought pursuant to the Individuals with Disabilities Education Act ("IDEA" or "Act"), 20 U.S.C. § 1400 *et seq.*[1] Compl., Dkt. No. 1.

---

[1] Plaintiffs also allege claims pursuant to Title II of the Americans With Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and the Washington Law Against Discrimination that are not relevant to the instant motion.

ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

- 1

Following the administrative hearing, the ALJ concluded that the placement offered by Defendant Issaquah School District ("Defendant" or "District") in October 2021 was not reasonably calculated to meet M.K.'s needs, and therefore violated the IDEA. Final Or. ¶ 13 (AR 1143). However, the ALJ denied Parents' request for reimbursement of expenses that they incurred when they placed M.K. at a residential treatment center and the cost of services provided by M.K.'s private psychiatrist, among other relief. *Id.* ¶¶ 14, 18-19, 22, 27 (AR 1143-47). Having fully considered the materials and relevant legal authorities, the Court affirms the decision of the ALJ. The reasoning for the Court's decision follows.

## II.    OVERVIEW OF THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT ("IDEA")

The IDEA is a "comprehensive educational scheme, conferring on disabled students a substantive right to public education." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992). The IDEA ensures that "all children with disabilities have available to them a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). Pursuant to the IDEA, "special education" means "specially designed instruction . . . to meet the unique needs of a child with a disability." *Id.* § 1401(29). "Related services" means "transportation, and such developmental, corrective, and other supportive services," including psychological and counseling services "as may be required to assist a child with a disability to benefit from special education." *Id.* § 1401(26)(A).

To provide a FAPE in compliance with the IDEA, public schools must evaluate children for special education eligibility, and for an eligible child, conduct and implement an individualized education program ("IEP"). *Id.* § 1414. An IEP is a written statement that contains, among other

ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

- 2

things, information regarding a child's present levels of performance; a statement of annual goals and short-term instructional objectives; the extent to which the child can participate in regular educational programs; and objective criteria for measuring the child's progress. *Id.* § 1414(d)(1)(A). The IEP is designed by a team that includes a representative of the local educational agency, the child's teacher and parents, and in appropriate cases, the child. *Id.* § 1414(d)(1)(A)-(B); *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1469 (9th Cir. 1993).

A school district violates the IDEA when it drafts an IEP "that is not reasonably calculated to enable the child to receive educational benefits." *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 432 (9th Cir. 2010). Where an administrative hearing officer or court determines that a child was denied a FAPE, the IDEA authorizes reimbursement for a child's placement in a private facility, if certain requirements are met. 20 U.S.C. § 1412(a)(10)(C); 34 C.F.R. § 300.148(c).

## III.    BACKGROUND

### A.  Factual Background

#### 1.  M.K. is Evaluated for Special Education Eligibility and Receives an IEP

This case concerns former Issaquah High School ("IHS") student M.K. Prior to M.K.'s enrollment at IHS, she was diagnosed with anxiety and depression and received ongoing psychiatric services from her private psychiatrist, Dr. John Pastor. During the first half of the 2020-2021 school year, M.K.'s junior year at IHS, M.K. struggled to attend classes and had poor academic performance. In April 2021, the District evaluated M.K. for special education eligibility. The evaluation team determined that M.K. was eligible for special education services and formalized an initial IEP (the "April 2021 IEP").

The April 2021 IEP placed M.K. in a general classroom setting for 100 percent of the school day, included one goal, and provided for 150 minutes of weekly specially designed instruction in "social emotional/behavioral" weekly to be delivered by a general education teacher. Final Or. ¶¶ 10, 20 (AR 1123, 1142). The April 2021 IEP also included an option for pass/fail grading and nine accommodations. In May 2021, M.K.'s IEP was amended to include "modified assignments" as an accommodation. *Id.* ¶ 21 (AR 1123).

### 2.  M.K. Continues to Struggle Academically

Following the implementation of the amended April 2021 IEP, M.K. continued to struggle academically during the remainder of the school year and over the summer, during which M.K. was enrolled in summer school. In late summer and shortly after the beginning of the 2021-2022 school year, Parents requested that the District change M.K.'s placement to a one-on-one academic placement or residential treatment center. In September 2021, Dr. Pastor told a District school psychologist that one-on-one academic instruction might be insufficient for M.K., and placement at a residential treatment center might be necessary. Dr. Pastor also recommended to the District school psychologist that M.K. receive psychotherapy on a weekly basis. The District declined to change M.K.'s placement but proposed that M.K. undergo a functional behavioral assessment.

### 3.  The District Agrees to Fund a Partial Placement at a One-on-One Instructional Setting

M.K. completed the functional behavioral assessment and was diagnosed with severe attention deficit disorder, dysthymia (generalized, chronic depressive disorder), generalized anxiety disorder, social anxiety disorder, and disruptive mood dysregulation disorder. At an October 2021 IEP team meeting, the neuropsychologist who conducted the functional behavioral assessment shared with the IEP Team that M.K.'s appropriate educational setting was a one-on-one

ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

- 4

instructional setting and that "a regular classroom will put [M.K.] behind very quickly." Final Or. ¶ 55 (AR 1129). However, rather than provide a full-time one-on-one educational placement for M.K., the District agreed to fund a single class at a specialized school, such as Brightmont Academy ("Brightmont"), that provides one-on-one academic instruction. The District explained that the partial placement would allow the District to determine whether full-time one-on-one instruction was appropriate. In December 2021, M.K. began attending a one-on-one class at Brightmont. After January 2022, however, M.K. stopped attending the class. Around that time, M.K. reported feeling very depressed and used alcohol and marijuana.

### 4. Parents Place M.K. at The Meadows

In February 2022, M.K. attempted suicide and was admitted to a hospital for monitoring for several days. Parents informed the District that they intended to place M.K. at a residential treatment center and seek reimbursement. In March, Parents placed M.K. at The Meadows, a short-term inpatient stabilization program designed for young adults struggling with addiction, emotional trauma, and mental health issues. The District declined to pay for M.K.'s placement at The Meadows but agreed to reevaluate M.K. to determine if a change in placement was warranted.

### 5. The District Agrees to Provide M.K. With a Residential Placement

On April 22, 2022, following the District's completion of the reevaluation, the District offered M.K. a placement at a residential facility. A new IEP (the "April 2022 IEP") was also developed for M.K., consistent with the District's offered placement. At that time, M.K. continued to reside at The Meadows.

The District began working with Plaintiffs to find an appropriate residential program. Because M.K. was 18 years old, however, finding a particular placement that would accept her and provide the necessary educational services to enable her to complete her high school education

ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

proved difficult.[2] A space was available for M.K. at a therapeutic treatment program called Rising Roads by the end of April 2022, but the District declined to place M.K. there because the program did not have an educational component. Additionally, some potential placements declined to accept M.K. due to her recent suicide attempt. On April 28, 2022, M.K. was discharged from The Meadows. At that time, the District had yet to agree to a particular residential program.

### 6. M.K. is Placed at Transcend and Fusion Academy

On June 15, 2022, the District agreed to fund M.K.'s placement at Transcend, a therapeutic program. Transcend lacked an educational component. However, the District agreed to the placement, given the difficulties that the District encountered in finding a program with the necessary educational services. The District also agreed to look for another program, in addition to Transcend, to provide M.K. with the necessary educational component.

On June 25, 2022, 64 days after the District agreed to fund a residential placement for M.K., she began treatment at Transcend. A few months later, M.K. also began taking academic classes funded by the District through Fusion Academy, a private school that provides one-on-one instruction. Around August 2023, M.K. successfully completed enough academic credits through Fusion Academy to earn her high school diploma. At the time of the due process hearing, M.K. was doing well. She had a job and plans to attend college.

### B. Procedural History

In March 2023, Parents filed an administrative due process complaint. Admin. Compl. (AR 898-907). Parents alleged violations of the IDEA and sought reimbursement for the cost of M.K.'s

---

[2] At the time M.K. was in high school, Washington law cut off eligibility for special education services at the end of the school year in which a student turned twenty-one years old. WAC § 392-172A-02000(1).

ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

treatment at The Meadows pursuant to the IDEA, or in the alternative, as compensatory education. *Id.* (AR 904-05). Parents also sought reimbursement for certain expenses connected to obtaining psychiatric care for M.K. from Dr. Pastor as compensatory education. *Id.* (AR 905).

A four-day due process hearing was held before Administrative Law Judge Dana Diederich. Final Or. (AR 1116). The ALJ issued a Finding of Fact, Conclusions of Law, and Final Order ("Final Order"), concluding that the District denied M.K. a FAPE by October 2021, when the District agreed to fund only a partial one-on-one placement for M.K. *Id.* ¶ 13 (AR 1143). However, the ALJ went on to conclude that The Meadows was not a proper placement for purposes of reimbursement pursuant to the IDEA, and therefore denied the requested remedy of reimbursement for the cost of M.K.'s placement at The Meadows. *Id.* ¶¶ 14, 18 (AR 1143-44). As to the other requested remedies, the ALJ concluded that no further relief was warranted because the additional services provided by the District, which included M.K.'s placement at Transcend and Fusion Academy, made up for any denial of a FAPE. *Id.* ¶¶ 19, 21-22, 27 (AR 1145-47).

Plaintiffs initiated this action and filed the instant motion for partial summary judgment, which seeks partial reversal of the ALJ's Final Order. *See* Compl.; Pls.' Mot. The District responds with a cross-motion for partial summary judgment, which asks this Court to affirm in full the decision of the ALJ. *See* Def.'s Resp. & Mot.

## IV.   LEGAL STANDARD

Pursuant to the IDEA, an aggrieved party may bring a civil action in federal district court after receiving the final decision of an ALJ. 20 U.S.C. § 1415(i)(2)(A). The party challenging the ruling bears the burden of proving that the ALJ's decision was not met by a preponderance of the evidence. *Clyde K. v. Puyallup Sch. Dist.*, 35 F.3d 1396, 1399 (9th Cir. 1994). The IDEA provides that the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear

ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

1   additional evidence at the request of a party; and (iii) basing its decision on the preponderance of

2   the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C.

3   § 1415(i)(2)(C). "Thus, judicial review in IDEA cases differs substantially from judicial review of

4   other agency actions, in which courts generally are confined to the administrative record and are

5   held to a highly deferential standard of review." *Ojai*, 4 F.3d at 1471.

6        The Court reviews *de novo* the ALJ's findings and conclusions. *Ashland Sch. Dist. v.*

7   *Parents of Student E.H.*, 587 F.3d 1175, 1182 (9th Cir. 2009). At the same time, "[t]he fact that

8   [former] § 1415(e) requires that the reviewing court 'receive the records of the [state] administrative

9   proceedings' carries with it the implied requirement that due weight shall be given to these

10  proceedings." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458

11  U.S. 176, 206 (1982) (third alteration in original). It is a matter of district court discretion to decide

12  the degree of deference to give the ALJ's determination. *Ojai*, 4 F.3d at 1472. "[T]he fact-intensive

13  nature of a special education eligibility determination coupled with considerations of judicial

14  economy render a more deferential approach appropriate." *Hood v. Encinitas Union Sch. Dist.*, 486

15  F.3d 1099, 1104 n.4 (9th Cir. 2007). The Court gives particular deference to "thorough and careful"

16  administrative findings. *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994).

17               **V.      DISCUSSION**

18       Neither Plaintiffs nor the District challenge the ALJ's finding that, by October 2021, the

19  partial one-on-one placement offered by the District was not reasonably calculated to meet M.K.'s

20  needs, and thus violated the IDEA. Plaintiffs, however, challenge the ALJ's other conclusions. The

21  Court proceeds by addressing each of the challenged conclusions.

22       **A.  The ALJ Correctly Concluded that the District Did Not Deny M.K. a FAPE Before
             October 2021**

23

24  ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

25   - 8

Parents' administrative due process complaint raised the issue of "[w]hether during the 2021-2022 school year, until Student's private placement, the District violated [the] IDEA and denied Student a FAPE by failing to provide her with an IEP that was reasonably calculated to meet her needs." Admin. Compl. (AR 904). The ALJ concluded that Parents did not provide sufficient evidence to show that the amended April 2021 IEP that was in place for M.K. at the start of the 2021-2022 school year "was inappropriate at the time it was developed." Final Or. ¶ 10 (AR 1142). Plaintiffs now argue that the ALJ should have found a denial of a FAPE as early as April 2021, when M.K.'s initial IEP was developed. Pls.' Mot. at 15.

The Court concludes that Plaintiffs are foreclosed from arguing that M.K.'s IEP denied her a FAPE prior to the beginning of the 2021-2022 school year. Review in IDEA cases is limited to issues raised in the administrative due process complaint. 20 U.S.C. § 1415(f)(3)(B); *Cnty. of San Diego v. Cal. Special Educ. Hearing Off.*, 93 F.3d 1458, 1465 (9th Cir. 1996) ("The scope of the administrative hearing mandated by [former] section 1415(b)(2) is limited to the 'complaint' raised to obtain the hearing."); *Marc. M. v. Dep't of Educ.*, 762 F. Supp. 2d 1235, 1241 (D. Haw. 2011) ("[A]rguments not raised in front of a hearings officer cannot be raised for the first time on appeal to the district court."). Because the relevant issue raised in Parents' due process complaint was the adequacy of M.K.'s IEP during the 2021-2022 school year, any challenge to the adequacy of M.K.'s IEP as it existed prior to that time is not properly before this Court. Admin. Compl. (AR 904).

The adequacy of M.K.'s IEP between the beginning of the 2021-2022 school year and October 2021 is properly before this Court. Although the ALJ provided minimal reasoning on this issue, reviewing the ALJ's findings *de novo*, the Court finds no error in the ALJ's conclusion that the evidence presented at the due process hearing was insufficient to find denial of a FAPE before October 2021. Final Or. ¶ 10 (AR 1142). Plaintiffs argue that M.K.'s IEP denied her a FAPE before

ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

October 2021 based on M.K.'s history of frequent absences dating back to middle school, M.K.'s grades during the 2020-2021 school year, and M.K.'s failure to attend most of summer school in 2021. Pls.' Mot. at 15. Although these considerations are suggestive of a FAPE denial, "[t]he key inquiry regarding an IEP's substantive adequacy is whether, taking account of what the school knew or reasonably should have known of a student's needs at the time, the IEP it offered was reasonably calculated to enable the specific student's progress." *Z.B. v. D.C.*, 888 F.3d 515, 524 (D.C. Cir. 2018); *see also Adams v. Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999). Here, the IEP in place at the beginning of the 2021-2022 school year was developed the previous school year, between April and May of 2021. Final Or. ¶ 10 (AR 1142). Therefore, information regarding M.K.'s final grades for the 2020-2021 school year and her 2021 summer school attendance was not available to the District when the amended April 2021 IEP was developed.

Given the information that was available to the District when it developed M.K.'s amended April 2021 IEP, the preponderance of the evidence does not support finding a FAPE denial before October 2021. Notably, the results of M.K.'s initial special education evaluation indicated that M.K.'s academic abilities and social-emotional functioning were in the average to above average range. Initial Eval. (AR 1177-78). Additionally, as the District points out, M.K.'s initial IEP was developed less than two months before the end of the school year during a time when students were beginning to return to in-person instruction after an extended period of remote instruction due to the COVID-19 pandemic. Def.'s Resp. & Mot. at 29. Indeed, M.K. acknowledged in her initial evaluation that she was eager to return to in-person learning because it was easier to focus at school, and that social interaction was a "key part of her learning." Initial Eval. (AR 1182). Under these circumstances, that M.K.'s amended April 2021 IEP placed her in a general education setting full-time was reasonable. Furthermore, M.K.'s amended April 2021 IEP included multiple

ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

accommodations, such as modified grading options, and weekly specially designed instruction, which took into account M.K.'s unique difficulties with anxiety and academics. Final Or. ¶¶ 19, 21 (AR 1123). Accordingly, this Court finds no error in the ALJ's conclusion that the District did not deny M.K. a FAPE before October 2021 and affirms the ALJ's ruling on this issue.

### B. The ALJ Correctly Concluded that Parents Were Not Entitled to Reimbursement for the Cost of M.K.'s Placement at The Meadows

Parents' due process complaint sought reimbursement for the cost of M.K.'s placement at The Meadows under two theories. Admin Compl. (AR 905). First, Parents claimed entitlement to reimbursement for the cost of The Meadows pursuant to the IDEA. *Id.* Second, Parents sought reimbursement for the cost of M.K.'s placement at The Meadows under the judicially created remedy of compensatory education. *Id.* The ALJ denied Parents' request for reimbursement for the cost of M.K.'s placement at The Meadows under both theories. Final Or. ¶¶ 14, 18-19, 21 (AR 1143-45). The Court proceeds by addressing the issue of reimbursement pursuant to the IDEA, followed by the issue of reimbursement for The Meadows as compensatory education.

#### 1. Parents Are Not Entitled to Reimbursement For The Meadows Pursuant to the IDEA

The ALJ concluded that Parents were not entitled to reimbursement for M.K.'s placement at The Meadows pursuant to the IDEA because the placement was made in response to a medical problem rather than for educational purposes. *Id.* ¶¶ 14, 18 (AR 1143-44). Plaintiffs now argue that M.K.'s placement at The Meadows was for educational purposes, given that (1) M.K.'s academic struggles precipitated her placement at The Meadows, and (2) The Meadows provided M.K. with social-emotional services that enabled her to later access traditional academic courses Pls.' Mot. at 16-19, 26-27. The District responds that the ALJ correctly concluded that The Meadows was not a proper placement for purposes of reimbursement pursuant to the IDEA because the placement

ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

- 11

1  was in response to an acute medical issue and had no educational component. Def.'s Resp. & Mot.

2  at 17-24.

3      The Court agrees with the ALJ's conclusion that the cost of The Meadows was not

4  reimbursable pursuant to the IDEA. The IDEA and its implementing regulations explicitly

5  authorize reimbursement for the cost of private special education services as a remedy if the court

6  finds that (1) the agency had not made FAPE available to the child in a timely manner prior to the

7  private placement enrollment, and (2) the private placement is appropriate. 34 C.F.R. § 300.148(c);

8  20 U.S.C. § 1412(a)(10)(C)(ii); *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993).

9      Neither Plaintiffs nor the District challenge the ALJ's finding that the District denied M.K.

10  a FAPE by October 2021. The Court addresses only the ALJ's conclusion as to the second factor:

11  the propriety of the private placement. In concluding that The Meadows was not a proper placement

12  for purposes of reimbursement pursuant to the IDEA, the ALJ applied the correct standard. The

13  ALJ's reasoning relied on the Ninth Circuit's decision in *Clovis Unified Sch. Dist. v. Cal. Office of*

14  *Admin. Hearings*, 903 F.2d 635, 643 (9th Cir. 1990). Final Or. ¶ 15 (AR 1143). In *Clovis*, the Ninth

15  Circuit held that a residential placement is justified pursuant to the IDEA when it is "necessary for

16  educational purposes," rather than as "a response to medical, social, or emotional problems . . .

17  quite apart from the learning process." *Clovis*, 903 F.2d at 643. At issue in *Clovis* was whether

18  parents were entitled to reimbursement pursuant to the IDEA for their child Michelle's placement

19  at a psychiatric hospital. *Id.* at 639. In concluding that Michelle's placement was for medical rather

20  than educational purposes, the court noted that the psychiatric hospital where Michelle was placed

21  provided Michelle with six hours of intensive psychotherapy per day and lacked any educational

22  services. *Id.* at 645-46.

23

24  ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

25  - 12

As the ALJ noted in her Final Order, it is undisputed that, like the private placement at issue in *Clovis*, The Meadows does not provide any educational services. *Id.* at 646; Final Or. ¶ 91 (AR 1136); *see also Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015) (upholding ALJ's finding that private placement was improper for purposes of reimbursement pursuant to the IDEA where placement did not provide special education services specifically needed by student); *Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 432 (3d Cir. 2013). It is also undisputed that The Meadows is a short-term stabilization program designed to address medical and emotional issues rather than educational issues. Final Or. ¶¶ 86, 91 (AR 1135-36). And contrary to Plaintiffs' argument, the severity of M.K.'s mental health issues at the time of her placement at The Meadows supports the ALJ's conclusion that the placement was medical in nature and that M.K. was admitted to The Meadows to work on trauma related to ongoing conflicts with her family, not educational issues. Meadows Admission Notes (AR 1453, 1467); *Clovis*, 903 F.2d at 645; *Ashland Sch. Dist. v. Parents of Student R.J.*, 588 F.3d 1004, 1010 (9th Cir. 2009). Accordingly, this Court affirms the ALJ's conclusion that Parents are not entitled to reimbursement pursuant to the IDEA for the cost of M.K.'s placement at The Meadows.

### 2. Parents Are Not Entitled to Reimbursement For The Meadows as Compensatory Education

The ALJ also concluded that reimbursement for The Meadows as a form of compensatory education was unwarranted, finding that the additional year of services provided by the District—the placement at Transcend and Fusion Academy—sufficiently compensated for any denial of a FAPE. Final Or. ¶ 21 (AR 1145). The Court agrees that Parents are not entitled to reimbursement for The Meadows as compensatory education.

ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

- 13

Compensatory education is a judicially created remedy not defined within the IDEA. In *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, the United States Supreme Court held that courts' authority to grant relief under the predecessor statute to the IDEA "includes the power to order school authorities to reimburse parents for their expenditures on private school education for a child if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act." 471 U.S. 359, 369 (1985). Since *Burlington*, courts have consistently extended the Supreme Court's reasoning regarding the availability of reimbursement pursuant to the IDEA to support the award of compensatory education as appropriate relief under the Act. *See Parents of Student W. v. Puyallup Sch. Dist.*, *No. 3*, 31 F.3d 1489, 1496 (9th Cir. 1994); *Reid ex rel. Reid v. D.C.*, 401 F.3d 516, 518 (D.C. Cir. 2005); *G ex rel. RG v. Ft. Bragg Dependent Sch.*, 343 F.3d 295, 308-09 (4th Cir. 2003) (collecting cases). Awards of compensatory education typically involve educational services ordered by the court to be provided prospectively to compensate for a past deficient program, such as extended assistance beyond the statutory age of entitlement, *see Pihl v. Mass. Dep't of Educ.*, 9 F.3d 184 (1st Cir. 1993), extra assistance in the form of tutoring, *see Hall by Hall v. Detroit Pub. Sch.*, 823 F. Supp. 1377 (E.D. Mich. 1993), and summer school, *see Johnson v. Bismarck Pub. Sch. Dist.*, 949 F.2d 1000 (8th Cir. 1991).

Here, because the court has already determined that the private placement is not appropriate for purposes of reimbursement pursuant to the IDEA, allowing Plaintiffs to pursue a compensatory education claim for tuition reimbursement would be improper. *See Ms. M. ex rel. K.M. v. Portland Sch. Comm.*, 360 F.3d 267, 273 (1st Cir. 2004). Accordingly, this Court affirms the ALJ's denial of reimbursement for the cost of M.K.'s placement at The Meadows as compensatory education.

**C. The ALJ Correctly Concluded that Parents Were Not Entitled to Reimbursement for the Cost of Dr. Pastor's Services as Compensatory Education**

ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

1    Parents' due process complaint also sought reimbursement for certain expenses connected

2    to obtaining psychiatric care for M.K. through Dr. Pastor. Admin. Compl. (AR 905). The ALJ

3    denied the request, reasoning that the additional year of services provided by the District made up

4    for any denial of a FAPE. Final Or. ¶¶ 21-22 (AR 1145). Plaintiffs contend that the ALJ erred

5    because "M.K. requiring an additional year of instruction to graduate is of no consequence when

6    determining whether M.K. is entitled to compensatory education." Pls.' Mot. at 24. The District

7    responds that any determination regarding compensatory education must take into consideration

8    any additional services a district provided to make up for missed services. Def.'s Resp. & Mot.

9    at 26-27. The Court agrees with the ALJ's conclusion that the equities, including the additional year

10   of services provided by the District, weigh against reimbursement for Dr. Pastor's services.

11   Compensatory education may be awarded if a FAPE has not been provided. *See Parents of*

12   *Student W.*, 31 F.3d at 1497. Compensatory education seeks to make up for "'educational services

13   the child should have received in the first place,' and 'aim[s] to place disabled children in the same

14   position they would have occupied but for the school district's violations of IDEA.'" *R.P. ex rel.*

15   *C.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1125 (9th Cir. 2011) (quoting *Reid*, 401 F.3d at

16   518). Compensatory education is an equitable remedy within the discretion of the district court to

17   be considered on a fact-specific basis. *Parents of Student W.*, 31 F.3d at 1497; *Forest Grove Sch.*

18   *Dist. v. T.A.*, 523 F.3d 1078, 1084-85 (9th Cir. 2008). Therefore, in awarding compensatory

19   education, the Court must "consider all relevant factors," including the conduct of both parties.

20   *Florence Cnty.*, 510 U.S. at 16; *W.G. v. Bd. of Trustees of Target Range Sch. Dist.*, 960 F.2d 1479,

21   1486 (9th Cir. 1992).

22   As the ALJ concluded, M.K. received very little education during the 2021-2022 school

23   year. Final Or. ¶ 21 (AR 1145). Additionally, in September 2021, Dr. Pastor suggested that M.K.

24   ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

25   - 15

might need a more restrictive placement and recommended that M.K. receive additional psychotherapy, which the District did not provide at that time. Pls.' Mot. at 24; Admin. Hrg. Tr. (AR 49-54). However, the additional services the District later provided through Transcend and Fusion Academy allowed M.K. to gain the educational benefits she would have received had the FAPE denial not occurred. *R.P.*, 631 F.3d at 1125. Accordingly, no further compensatory education is warranted. This Court affirms the ALJ's denial of reimbursement for Dr. Pastor's services.

### D. The ALJ Correctly Concluded that the District's Failure to Provide a Placement for 64 Days Was Not a Material Implementation Failure

Parents' due process complaint raised the issue of "[w]hether the District materially failed to implement Student's IEP in 2022 by neglecting to offer an appropriate placement for 64 days." Admin. Compl. (AR 904). The ALJ concluded that the 64-day delay was not a material failure. Final Or. ¶¶ 26, 28 (AR 1146-48). The ALJ further concluded that, even if the 64-day delay in finding a residential placement for M.K. amounted to a material failure to implement the April 2022 IEP, the additional services provided by the District compensated for any FAPE denial. *Id.* ¶ 27 (AR 1147). Plaintiffs now argue that following M.K.'s discharge from The Meadows, the District could have simply approved M.K.'s admission to Rising Roads, even though it lacked an academic component. Pls.' Mot. at 24-25. The District responds that Parents did not establish that Rising Roads was appropriate for M.K.'s educational needs, nor did they show that the District could have secured a provider to deliver academic instruction if M.K. was placed there. Def.'s Resp. & Mot. at 30.

The Court agrees with the ALJ's conclusion that the 64-day delay between the development of the April 2022 IEP and M.K.'s placement at Transcend did not amount to a material failure to implement the April 2022 IEP. Reasonable delays incurred in implementing an IEP are not material

ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

and do not violate the IDEA. *See J.S. v. Shoreline Sch. Dist.*, 220 F. Supp. 2d 1175, 1189 (W.D. Wash. 2002); *Tracy N. v. Haw. Dep't of Educ.*, 715 F. Supp. 2d 1093, 1112 (D. Haw. 2010). As the ALJ noted in her Final Order, once the District offered M.K. a residential placement, the District worked diligently with Plaintiffs to identify an appropriate program. Final Or. ¶ 26 (AR 1146). And although the District ultimately agreed to place M.K. at a residential program without an educational component, it was reasonable for the District to initially seek a residential placement with an educational component before agreeing to an alternate arrangement. The preponderance of the evidence supports the ALJ's conclusion that the 64-day delay between the development of the April 2022 IEP and M.K.'s placement at Transcend was reasonable and did not amount to a material failure to implement the IEP.

## VI.    CONCLUSION

For the foregoing reasons:

1.  The ALJ's decision on Parents' IDEA claims is AFFIRMED.

2.  Defendant's motion for partial summary judgment (Dkt. No. 14) is GRANTED.

3.  Plaintiffs' motion for partial summary judgment (Dkt. No. 12) is DENIED.

DATED this 12th day of June 2025.

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

- 17